## S12A1498. HARRIS v. UPTON.

(739 SE2d 300)

THOMPSON, Presiding Justice.

Appellant Alvin Harris was tried in June 1999 and convicted of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon for which he received a mandatory life sentence for felony murder plus consecutive and concurrent terms on the additional counts. His convictions and sentence were affirmed on direct appeal in *Harris v. State*, 279 Ga. 304 (612 SE2d 789) (2005).

In 2008, Harris filed a petition for habeas corpus raising numerous grounds for relief, including several alleging ineffective assistance of appellate counsel. Following an evidentiary hearing at which Harris was represented by counsel and both Harris and his appellate counsel testified, the habeas court entered an order denying relief. Harris timely filed an application for certificate of probable cause to appeal asserting that the habeas court erred in rejecting two of his ineffective assistance of appellate counsel claims in which he argued appellate counsel failed to reasonably investigate and submit evidence in support of his claims on appeal that trial counsel (1) was ineffective for failing to inform him of a plea offer made by the State and (2) was under the influence of drugs during the time he represented Harris.

This Court granted Harris' application for certificate of probable cause to appeal to consider whether Harris' appellate counsel was ineffective for failing to investigate and present evidence on these claims, particularly in light of the recent United States Supreme Court decision in *Missouri v. Frye*, ___ U. S. ___ (132 SC 1399, 182 LE2d 379) (2012). For the reasons that follow, we affirm the habeas court's decision.

1. The standard under which we consider Harris' ineffective assistance of appellate counsel claims is that established by the United States Supreme Court in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), requiring a showing of both deficient performance and prejudice caused by the deficiency. *Battles v. Chapman*, 269 Ga. 702 (1) (506 SE2d 838) (1998). To establish deficient performance, a habeas petitioner must overcome the strong presumption that appellate counsel's actions fell within the broad range of reasonable professional conduct, the reasonableness of which is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. *Barker v. Barrow*, 290 Ga. 711, 712 (723 SE2d 905) (2012). "Circumstances knowable only through hindsight are not considered. [Cit.]" *Terry v. Jenkins*, 280 Ga. 341, 342 (627 SE2d 7) (2006). Moreover, the prejudice prong requires

the petitioner to show that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Walker v. Hagins*, 290 Ga. 512-513 (722 SE2d 725) (2012). Finally, on review, this Court is required to accept the habeas court's findings of fact and credibility determinations unless clearly erroneous, although it independently applies those facts to the law. *Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001).

At the habeas hearing, Harris submitted a letter from the State to Harris' trial counsel dated approximately two months prior to trial offering Harris a plea deal of 20 years to serve on voluntary manslaughter and noting that a felony murder conviction would carry a life sentence. Harris testified that trial counsel never showed him the letter and claimed he did not learn of the plea offer until after his sentencing hearing when his mother told him about it. Harris claims that trial counsel told his mother about the plea offer but instructed her not to tell Harris because counsel thought he could get Harris a lighter sentence. Harris also testified his trial counsel never advised him he was facing a mandatory life sentence if convicted of felony murder. Harris submitted the transcript from his sentencing hearing showing trial counsel presented mitigating evidence on Harris' behalf and asked the trial court not to impose a life sentence following his conviction as evidence that counsel was unaware of the law and likely had never read the State's plea offer containing this information. Finally, Harris sought to submit other evidence he asserted could have been used to bolster his ineffective assistance of trial counsel claims, including trial counsel's time sheets from the public defender's office; records of trial counsel's subsequent disbarment; and records from trial counsel's divorce proceedings.[1]

In its recent decision in *Missouri v. Frye*, supra, 132 SC at 1402, the United States Supreme Court determined that the negotiation of a plea bargain constitutes a critical stage for ineffective-assistance purposes, and held that "defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused." This holding is consistent with long-standing Georgia precedent that the failure to convey a plea offer renders counsel's performance deficient, although prejudice can only be shown by some indication that the defendant was amenable to the offer. *Lloyd v. State*, 258 Ga. 645, 648 (373 SE2d 1) (1988); see *Lafler v. Cooper*, ___ U. S. ___ (132 SC 1376, 1384, 182 LE2d 398)

---

[1] The habeas court ruled the records from trial counsel's divorce proceedings were irrelevant and refused to admit them. Harris argues this ruling was in error and that these records were relevant as they provided evidence of counsel's drug use and hospitalization at the time the State's plea offer to Harris was made.

(2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice").

Here, Harris claims he would have accepted the State's plea offer had he known of it and been properly advised by trial counsel. Although he admits this claim and that involving trial counsel's alleged drug use were raised on direct appeal and rejected by this Court, he argues his inability to prevail on these claims was due to appellate counsel's deficient representation, specifically her failure to reasonably investigate and submit evidence in support of these claims other than Harris' testimony. He asserts the habeas court's findings are clearly erroneous and contends the court erred in concluding he failed to prove his appellate counsel was ineffective under *Strickland*. Thus, the primary issue for review by this Court is whether Harris' appellate counsel was deficient for failing to conduct a reasonable investigation of Harris' claims on appeal and whether Harris was prejudiced as a result.

2. "[I]n any case in which the effectiveness of counsel for inadequate investigation is claimed, the reasonableness of a particular decision not to investigate in the manner urged must be assessed in light of all the circumstances at that time, and such assessment must include a heavy measure of deference to counsel's judgments. [Cit.]" *Barker v. Barrow*, supra, 290 Ga. at 713. However, counsel's failure to investigate is unreasonable where it is the result of inattention, rather than reasoned strategic judgment. *Terry*, supra at 347.

(a) Harris argues appellate counsel failed to investigate his ineffective assistance of trial counsel claims regarding lack of notice of the plea offer and trial counsel's drug use and claims this failure was due to inattention rather than strategic judgment, pointing to the fact that appellate counsel only added these claims in a second amended motion filed immediately prior to the motion for new trial hearing.

The record reflects however that appellate counsel spoke with Harris' mother and other family members during the three-year period she represented him on appeal and that she pursued and investigated a number of issues, including several ineffective assistance of counsel claims, which Harris wished to raise.[2] Further, appellate counsel testified she had been aware of Harris' plea and drug claims and had conducted some research with respect to these issues prior to meeting with Harris. She admitted she offered no

---

[2] Among the additional issues raised by appellate counsel on motion for new trial were Harris' claims that trial counsel failed to subpoena witnesses, failed to consult with Harris, failed to investigate Harris' mental history and present it in mitigation of punishment, and pressured Harris into waiving his right to testify.

evidence in support of these claims other than Harris' testimony at the motion for new trial hearing, primarily because she was unable to locate Harris' trial counsel.

In denying Harris' petition, the habeas court found that appellate counsel visited Harris,[3] kept him informed, and conducted all of the investigation he and his family requested; adequately attempted to locate and subpoena trial counsel to develop evidence; and focused on raising legal errors committed by trial counsel. Based on our review of the record, we conclude these findings are not clearly erroneous, and we reject Harris' claim that appellate counsel's investigation was unreasonable due to inattention.

(b) Harris also contends appellate counsel was deficient in failing to locate trial counsel for the motion for new trial hearing. Appellate counsel testified that her attempts to locate trial counsel, who was subsequently disbarred, were unsuccessful despite efforts to subpoena him and contact him through information provided by State Bar records and at his residential address. She further testified that while she had heard hearsay rumors in the legal community about trial counsel's alleged drug use and difficulties in his divorce proceedings, and even attempted to locate him by checking with local law enforcement to see if he was incarcerated, she could not find him and had no personal knowledge as to whether he was using drugs at the time of Harris' trial.

We acknowledge the difficulty faced by Harris in attempting to prove his lack of notice claim without trial counsel's corroborating testimony. "While the issue of ineffectiveness of counsel may sometimes be determined without the testimony of trial counsel, it generally cannot be done when the basis of the claim involves matters outside the record, such as discussions between counsel and client." *Taylor v. State*, 197 Ga. App. 678, 679-680 (399 SE2d 213) (1990); see also *Wilson v. State*, 277 Ga. 195, 199 (586 SE2d 669) (2003) (where trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance). It is unfortunate that trial counsel could not be located in this case as the generally undisputed evidence presented by Harris paints a disturbing picture of trial counsel's personal and professional decline in the years following Harris' trial, culminating in counsel's death

---

[3] Even if the habeas court erred in finding that appellate counsel actually met with Harris prior to the weekend before the hearing on his motion for new trial, as it is clear that counsel and Harris corresponded throughout the three-year period leading up to the hearing and that counsel also met and corresponded with Harris' family members during this time, we do not find this error compelling.

prior to Harris' habeas proceeding. Although Harris contends appellate counsel should have done more to locate trial counsel, we cannot conclude under the circumstances presented that the efforts actually made by appellate counsel were deficient.[4] Counsel cannot be held ineffective for failing to track down a witness whose whereabouts are unknown. *Moore v. State*, 278 Ga. 397 (603 SE2d 228) (2004).

(c) Nor do we find error in the habeas court's determination that it was reasonable for appellate counsel not to subpoena trial counsel's State Bar, civil, and criminal records. Harris contends these records could have been submitted on appeal as independent evidence that trial counsel routinely engaged in deficient representation and had ongoing drug problems. However, while appellate counsel testified she was aware of trial counsel's disbarment and alleged drug abuse and conducted research on both these issues, she discovered no admissible evidence that trial counsel was using drugs while representing Harris and she properly concluded that counsel's subsequent disbarment did not provide a basis for presuming deficient performance in Harris' case. See *Harris,* supra, 279 Ga. at 306 (citing *Shiver v. State*, 276 Ga. 624, 625 (581 SE2d 254) (2003)). Given that appellate counsel raised numerous grounds for relief and other ineffective assistance of trial counsel claims on appeal, we agree with the habeas court that appellate counsel's failure to subpoena these records and her strategic decision to primarily focus on Harris' other claims on appeal was not unreasonable under the circumstances.

(d) Finally, even assuming appellate counsel's investigation was deficient for failing to uncover the additional evidence Harris now presents, we agree with the habeas court that this evidence is largely speculative and that Harris has failed to establish the requisite prejudice under *Strickland*. See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 616 (458 SE2d 623) (1995). Harris contends that as trial counsel's time sheets for the relevant period show counsel made no billing entries during the month in which the State's plea offer was made, they independently support his claim that counsel never told him about the plea offer. However, these records also fail to reflect any conversations between trial counsel and Harris' mother subsequent to the date of the State's plea offer, despite Harris' testimony that counsel informed his mother of the plea deal and despite the fact that

---

[4] Indeed, it appears from the evidence submitted by Harris at the habeas hearing that several of trial counsel's other clients and the State Bar were unable to find him during this same period.

previous conversations between counsel and Harris' mother predating the offer are reflected therein.[5] Even more importantly, these records reveal that trial counsel conferred with Harris for several hours in the month after the offer was made. As any factual determinations made regarding the subject of these discussions would rely solely on the credibility of Harris' testimony, we fail to see how these records provide additional proof that counsel failed to inform Harris of the State's offer.

Likewise, Harris' argument that his sentencing hearing transcript provides proof that trial counsel was unaware that a felony murder conviction carried a mandatory life sentence is unpersuasive. Not only would accepting such an argument require this Court to make vast assumptions regarding trial counsel's motivations in offering mitigating evidence at Harris' sentencing hearing,[6] but Harris' assertion that this evidence tends to show trial counsel may not have even read the plea offer contradicts his own testimony that trial counsel told his mother of the plea deal. See *McDaniel v. State*, 279 Ga. 801, 802 (621 SE2d 424) (2005).

Finally, even were this Court to determine that the habeas court erred in refusing to consider records showing trial counsel was briefly hospitalized after receiving the State's plea offer, we fail to see how this evidence provides any proof that trial counsel withheld the plea offer from Harris.

A habeas judge sits as the trier of facts and may reject the testimony of a witness in whole or in part. *Jackson v. State*, 283 Ga. 462 (660 SE2d 525) (2008); *Crawford v. Linahan*, 243 Ga. 161, 164 (253 SE2d 171) (1979). In the instant case, the habeas court reviewed the evidence presented by Harris and found no change in the facts or the law since these claims were decided adversely to him on direct appeal. Assessing appellate counsel's efforts in light of all the circumstances at the time of the appeal and examining the reasonableness of her investigation from counsel's perspective under the particular circumstances of this case, the habeas court concluded that Harris failed to show that a viable defense or witnesses with information helpful to the defense existed which appellate counsel should have

---

[5] Although Harris' mother testified at the motion for new trial hearing, she was not asked by appellate counsel to corroborate Harris' claim that she was told of the plea offer prior to trial and instructed by trial counsel not to tell. While Harris now contends this shows deficient performance on the part of appellate counsel, he has failed to provide any evidence showing that his mother's testimony would have corroborated his claims.

[6] We note that in addition to felony murder, Harris was convicted of aggravated assault and two firearm possession charges.

presented post trial and on appeal. Finding no reversible error in the habeas court's factual and legal determinations, we affirm the denial of Harris' petition.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in judgment only.*

DECIDED MARCH 4, 2013.

*Fish & Richardson, Thad C. Kodish, Brian P. Boyd, Jack P. Smith III, Erin P. Alper, Jacqueline Tio,* for appellant.
*Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Sara K. Sahni, Assistant Attorneys General,* for appellee.